## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:17-cv-00221-MR

|  |  |  |
|---|---|---|
| **MIGUN LIFE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **DEFAULT JUDGMENT** |
| **vs.** | ) | **AND ORDER OF** |
| | ) | **PERMANENT INJUNCTION** |
| **LARRY COX, MASSAGE ENERGY,** | ) | |
| **LLC, and IMMUNITY FOR LIFE, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Default Judgment [Doc. 17].

## I.    PROCEDURAL BACKGROUND

The Plaintiff Migun Life, Inc. commenced this action against the Defendants Larry Cox, Massage Energy, LLC, and Immunity for Life, LLC (collectively, "Defendants") on August 14, 2017, asserting claims for trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a); a claim for reverse passing off, under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A) ("ACPA"); and a claim for unfair and deceptive trade practices under North Carolina law, N.C. Gen. Stat. § 75-1.1 ("Chapter 75").  [Doc. 1].

Each Defendant was properly served with the Summons and Complaint but failed to answer or otherwise defend. Accordingly, the Court entered default against all Defendants on January 2, 2018. [Doc. 12]. The Plaintiff now moves for entry of a default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure. [Doc. 17]. The Court held a hearing on the Plaintiff's motion on June 1, 2018, at which time the Court requested supplemental briefing from the Plaintiff. The Plaintiff's supplemental brief was filed on June 15, 2018. [Doc. 20]. Having been fully briefed, this matter is ripe for disposition.

## II.    STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Once a defendant has been defaulted, the plaintiff may then seek a default judgment. If the plaintiff's claim is for a sum certain or can be made certain by computation, the Clerk of Court may enter the default judgment. Fed. R. Civ. P. 55(b)(1). In all other cases, the plaintiff must apply to the Court for a default judgment. Fed. R. Civ. P. 55(b)(2).

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . ." Ryan v. Homecomings Fin. Network, 253 F.3d 778,

780 (4th Cir. 2001) (quoting <u>Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank</u>, 515 F.2d 1200, 1206 (5th Cir. 1975)). A defendant, however, "is not held . . . to admit conclusions of law." <u>Ryan</u>, 253 F.3d at 780 (quoting <u>Nishimatsu</u>, 515 F.2d at 1206). The Court therefore must determine whether the facts as alleged state a claim for relief. <u>GlobalSantaFe Corp. v. Globalsantafe.com</u>, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).

## III.   PLAINTIFF'S FACTUAL ALLEGATIONS

The well-pleaded factual allegations of the Plaintiff's Complaint having been deemed admitted by virtue of the Defendants' default, the following is a summary of the relevant facts.

The Plaintiff Migun Life, Inc. ("Migun Life") is a corporation organized and existing under the laws of the State of North Carolina, with its principal office located in Fletcher, North Carolina. [Doc. 1 at ¶1]. The Defendant Larry Cox ("Cox") is a citizen and resident of the State of Michigan, residing at 107 Park Avenue, Apartment 7, Charlevoix, Michigan 49720. [<u>Id.</u> at ¶ 2]. The Defendant Massage Energy, LLC ("Massage Energy") is a limited liability company organized and existing under the laws of the State of Michigan with its principal office located at 6769 Courtland Drive NE, Rockford, Michigan 49341. [<u>Id.</u> at ¶ 3]. The Defendant Immunity for Life, LLC ("Immunity for Life") is a limited liability company organized and existing

3

under the laws of the State of Michigan with its registered office located at 601 Abbot Road, East Lansing, Michigan 48823. [Id. at ¶4]. Defendant Cox is the sole member and owner of Massage Energy and Immunity for Life and thus conducts, controls, and is solely responsible for their activities. [Id. at ¶ 5].

Migun Medical Instrument Co., Ltd. ("Migun Medical"), owns all rights to the MIGUN word mark and other MIGUN logo marks (collectively, "the MIGUN Marks"), including at common law and federally registered. One of the MIGUN Marks is a federally registered trademark, U.S. Reg. No. 2,967,438, which was registered to Migun Medical in 2001 and is now incontestable in connection with infrared ray lamp for therapeutic use, ultraviolet lamp for therapeutic use, mercury lamp for therapeutic use, carbon lamp for therapeutic use, electric massage apparatus, physical treatment instruments, namely, beds, mats and belts which apply heat, friction, and pressure, heat treatment bed, electric vibration massage apparatus as well as independent sales representatives in the field of medical treatments and physical treatment instruments, wholesale stores featuring medical instruments and physical treatment instruments, independent sales representatives in the field of massage apparatus, wholesale stores featuring massage apparatus, and import and export agency. [Id. at ¶ 8].

The MIGUN Marks have been in continuous and exclusive use throughout the United States since at least as early as 2000 by Migun Medical and its licensees. [Id. at ¶9]. Due to the popularity of the Migun products, the MIGUN Marks are well known by those in the medical industry practicing and studying Eastern medicine, as well as by the consumers of these practitioners' services or those who have obtained Migun Medical products for personal use. [Id. at ¶ 10]. The English translation of the Korean Term "MIGUN," is "beauty is health," which exemplifies the marriage of Migun Medical's products with both health and aesthetics. [Id. at ¶ 11]. The MIGUN Marks have acquired tremendous commercial strength and are used widely throughout the United States by doctor's offices, massage therapists, physical therapists, and others to specifically refer to Migun Medical's products. [Id. at ¶ 12]. Since the MIGUN Marks began being used in the United States, there have been more than $170 million in sales of Migun Medical products sold in the United States. [Id. at ¶ 13].

The Plaintiff Migun Life is the sole authorized distributor of Migun Medical products in North America, including having the exclusive right to import and distribute Migun Medical products as well as having the exclusive license to use and sublicense and enforce the Migun Marks in the United States. [Id. at ¶¶ 14, 15].

Migun Medical's signature product is its Physical Therapy Table ("the Therapy Table"), which is an FDA approved Class II medical device. The intended use of this product is to provide patients with muscle relaxation therapy by delivering heat and soothing massage using far infrared lights to provide topical heating for the temporary relief of minor muscle and joint pain and stiffness, the relaxation of muscles, and the temporary increase of local circulation where applied. Migun Medical's patented jade massage heads are placed in a specific measurement to help stimulate better blood flow and nerve conduction along the user's spine which helps to stimulate the user's autonomic nervous system, which controls things such as blood pressure, blood glucose regulation, digestion, bladder function, breathing, and other automatic body functions. [Id. at ¶ 16]. Migun Life sells this and other Migun Medical products through its showroom in Fletcher, North Carolina, and through its online store on its websites, www.migunlife.com and www.migunworld.com. [Id. at ¶ 17].

All of the Migun Medical products prominently display the MIGUN Marks. [Id. at ¶ 18]. Due to the prominent display of the MIGUN Marks, when the Migun Medical products are enjoyed by a user — whether that be at a physician's office or at home — the positive effects of the products are

associated with Migun Medical, Migun Life, and Migun Life's sublicensees. [Id. at ¶ 19].

From the early 1998 through 2016, Migun Medical had an agreement with Migun Medical Instruments Inc. ("MMI") to allow MMI to serve as the sole authorized distributor of Migun Medical products in North America. [Id. at ¶ 20]. Defendant Cox entered into an agreement with MMI in approximately 2005 to allow him to act as an authorized dealer of Migun Medical products. [Id. at ¶ 21]. Defendant Cox formed Massage Energy and Immunity for Life for the purpose of conducting certain activities relating to his Migun Medical product dealership. [Id. at ¶¶ 22, 23]. Through his relationship with MMI, Cox and his companies were permitted to purchase at wholesale rates, advertise, and sell Migun Medical products, including using the MIGUN Marks in their efforts. [Id. at ¶ 24]. In April 2016, Migun Medical ceased its relationship with MMI, which also severed the Defendants' ties to Migun Medical. [Id. at ¶ 25]. Accordingly, as of April 2016, the Defendants were no longer authorized dealers of Migun Medical products. [Id. at ¶ 26]. Neither Migun Medical nor Migun Life has licensed or otherwise granted Defendants the authority to make use of the MIGUN Marks. [Id. at ¶ 27]. The Defendants, however, continue to hold themselves out as a "Migun dealer." [Id. at ¶ 28]. For example, as of the time of the filing

of the Complaint, one of the Defendants' webpages continued to lead with "Migun Dealer – Larry Cox" and to prominently feature the MIGUN logo mark. [Id. at ¶ 29; Doc. 1-5].

In May 2016, Migun Life contacted the Defendants and updated them regarding Migun Life's agreement with Migun Medical. Migun Life also provided the Defendants with information regarding certain FDA regulations as Defendants were not complying with such regulations in their provision of maintenance services and re-sale of used Migun Medical products. In addition, Migun Life requested that the Defendants cease all use of the MIGUN Marks except to refer specifically to Migun Medical products. [Doc. 1 at ¶ 30]. The Defendants, however, refused to comply with Migun Life's requests and continued to use the MIGUN Marks in their business name. For example, the Defendants continued to advertise products for sale and lease on their Facebook page listed under the name "Migun MassageEnergy." [Id. at ¶ 31; Doc. 1-6]. In both September 2016 and April 2017, the Defendants exhibited at the Michigan Association of Chiropractors' ("MAC") conventions, holding themselves out as a Migun Medical and/or Migun Life representative. [Doc. 1 at ¶32; Doc. 1-7].

In May 2017, Migun Life's counsel, wrote to Defendant Cox, reiterating that the Defendants must cease their improper use of the MIGUN Marks.

[Doc. 1 at ¶¶ 33, 34; Doc. 1-8].  Despite this communication, Defendant Cox continues to: advertise Migun Medical products on a Facebook under the name "Migun MassageEnergy"; represents himself as the Owner of "MIGUN Massage Energy" and as a Migun Dealer on LinkedIn; and post Migun Products for sale on eBay under the "Migun Massage Energy" brand. [Doc. 1 at ¶ 35; Docs. 1-6, 1-10, 1-11].

In addition, the Defendants continue to use their website, www.massageenergy.com, to advertise for sale the "Massage Energy Bed," which is represented to be a "modified version of the The Migun Thermal Jade Massage Bed."  The "Massage Energy Bed" is simply a Migun Medical Product with a non-Migun Medical accessory rack attached.  The Defendants' Website uses phrases such as "Massage Energy's Migun Beds," and "our revolutionary Jade Thermal Massage beds will provide…" when referring to Migun Medical Products, further confusing the source of origin as to the products Defendants sell.  [Doc. 1 at ¶¶ 36-38, Doc. 1-12]. The Defendants also use photos on their website of Migun Medical products that have been edited to remove the MIGUN Marks, again leading to a likelihood that consumers will be confused as to the source of origin of the products Defendants sell.  [Doc. 1 at ¶ 39].

The Defendants also took control of a Google listing for Migun Life's predecessor, MMI, in a manner that is likely to confuse medical professionals and/or consumers as to the affiliation, connection, or association of Defendants and Migun Medical and/or Migun Life.  MMI was located at 3700 Wilshire Blvd., Los Angeles, CA 90010, the address that continues to be shown in the Google listing.  MMI's phone number as shown in the listing, (213) 388-3055, was transferred to Migun Life.  The Defendants, however, edited the listing to redirect MMI's website to www.migunhealth.com, a URL owned by Immunity for Life, which then automatically redirected to the Defendants' www.massageenergy.com website.  [Doc. 1 at ¶ 40; Doc. 1-13].

## III.    DISCUSSION

### A.    Trademark Infringement

Section 32 of the Lanham Act provides that the registrant of a mark may bring a civil action against:

> [a]ny person who shall, without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]

15 U.S.C. § 1114(1)(a).  Section 43(a) of the Act provides that a registrant may bring a civil action against:

[a]ny person who, on or in connection with any goods or services, ... uses in commerce any word ... [or] name ..., or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]

15 U.S.C. § 1125(a)(1)(A).

To prevail on a claim for trademark infringement under the Lanham Act, a plaintiff must prove the following:

(1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers.

People for Ethical Treatment of Animals (PETA) v. Doughney, 263 F.3d 359, 364 (4th Cir. 2001) (citing 15 U.S.C. §§ 1114, 1125(a); Lone Star Steakhouse & Saloon v. Alpha of Va., Inc., 43 F.3d 922, 930 (4th Cir.1995)).

Here, the Plaintiff has successfully made out a claim for trademark infringement. First, considering the well-pleaded factual allegations of the Complaint as admitted by the Defendants by virtue of the default, the Plaintiff has established that it has the sole authority to use the MIGUN Marks, to

sublicense their use in the United States, and to file suit based on Migun Medical's ownership of the MIGUN Marks. As such, the Plaintiff has shown that it has standing to sue for trademark infringement of the MIGUN Marks. See, e.g., Federal Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd., 726 F.3d 62, 77-78 (2d Cir. 2013) (noting that licensee of trademark "must show that its 'license' amounts, in fact, to an assignment to establish entitlement to sue under Section 32(1)").

Second, the Plaintiff has established that the Defendants have used the MIGUN Marks in commerce and in connection with the sale, offering for sale, distribution, or advertising of goods or services. The Plaintiff has established that the Defendants do not have permission from the Plaintiff or Migun Medical to utilize the MIGUN Marks except to specifically describe the products they offer for sale as fair use, and that the Defendants are aware that they lack such permission. The Plaintiff has established that the Defendants continue to utilize the MIGUN Marks beyond the scope of fair use in advertising products utilizing the MIGUN Marks in such a way as to appear to represent themselves as Migun Medical representatives, and offering their store services by utilizing the MIGUN Marks as their own trademarks under which they do business.

With respect to the final element of trademark infringement, the Fourth Circuit has identified a number of factors to determine the likelihood of confusion. Those factors include:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 153 (4th Cir. 2012). The Fourth Circuit has recognized that these "factors are not always weighted equally, and not all factors are relevant in every case." Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC, 507 F.3d 252, 259-60 (4th Cir. 2007).

Here, the allegations that are deemed admitted show a strong likelihood of confusion. The MIGUN Marks have been used since the early 2000's and are strong and distinctive marks. Migun Life has shown that the Defendants offer similar goods and services and advertise to the same customers, such as chiropractors, fitness centers, holistic care centers, massage therapists, and physical therapists as well as the general public, in overlapping geographic areas of trade, while continuing to make use of the

MIGUN Marks and to hold themselves out as a "Migun dealer." For all these reasons, the Court concludes that the Defendants' use of the MIGUN Marks in the advertising of their goods and services (beyond the permissible fair use) is likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of the Defendants with the Plaintiff and/or Migun Medical.

Accordingly, the Court finds that the Plaintiff's well-pleaded factual allegations establish its claim for trademark infringement against the Defendants.

## B.    False Designation of Origin/Reverse Passing Off

The Lanham Act prohibits a "false designation of origin" that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association ... or as to the origin" of "goods, services, or commercial activities by another person[.]"  15 U.S.C. § 1125(a)(1)(A).   To prove a claim for false designation of origin, a plaintiff must prove the same elements that are required to establish a trademark infringement claim.  See Lamparello v. Falwell, 420 F.3d 309, 313 (4th Cir. 2005).

One type of false designation of origin that may occur is commonly known as a "reverse passing off."  A "reverse passing off" occurs when a "producer misrepresents someone else's goods or services as his own."

Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28 n.1 (2003). A reverse passing off claim requires proof of four elements: "(1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin." Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc., 618 F.3d 417, 438 (4th Cir. 2010), as amended (Aug. 24, 2010) (quoting Syngenta Seeds, Inc. v. Delta Cotton Coop., Inc., 457 F.3d 1269, 1277 (Fed. Cir. 2006)).

Here, the Court has concluded that the Plaintiff has successfully made out a claim for trademark infringement. As the elements of a general false designation of origin claim are identical to the elements of a claim for trademark infringement, the Court concludes that the Plaintiff has successfully made out a claim for false designation of origin as well.

With respect to the Plaintiff's specific claim for reverse passing off, the Court concludes that this claim also has been established. First, the Plaintiff has established that while certain of the Defendants' advertisements using the MIGUN Marks to describe the Migun Medical products the Defendants offer for sale were proper and constitute fair use, the Defendants also described Migun Medical products as "Massage Energy Thermal Massage

System," "the M.E. Bed," and "Massage Energy PT Pro." The Defendants listed a Migun Medical Therapy Table on eBay with the brand listed as "Migun Massage Energy" and the model as "MassageEnergy." The Defendants also offer for sale a Migun Medical Therapy Table on eBay under the trademark "MassageEnergy System." The admitted allegations establish that the Defendants had no authorization from the Plaintiff or Migun Medical to pass off Migun Medical products under another trademark, namely the "Massage Energy" trademark. The Plaintiff has further shown that the Defendants' use of the "Massage Energy" mark in connection with Migun Medical products is likely to cause confusion, mistake, or to deceive as to the source of origin of these Migun Medical products.

For these reasons, the Court concludes that the Plaintiff has successfully made out a claim for reverse passing off under the Lanham Act against the Defendants.

### C. Cybersquatting

To establish its claim under the ACPA, the Plaintiff is required to prove that (1) the Defendants "had a bad faith intent to profit from using" the domain names www.migunmedical.com, www.migunmassageenergy.com, and www.migunhealth.com, and (2) these domain names are "identical or

confusingly similar to, or dilutive of, the distinctive and famous [MIGUN] Mark[s]." PETA, 263 F.3d at 367 (citing 15 U.S.C. § 1125(d)(1)(A).

Here, the Plaintiff has established that the Defendants' domain names are confusingly similar to the registered MIGUN Marks. The undisputed allegations of the Complaint further establish that the Defendants offer goods and services in direct competition with Migun Medical, the Plaintiff, and the Plaintiff's sublicensees through their URLs containing the MIGUN mark. The Defendants' conduct in this regard demonstrates a bad faith intent to profit from the distinctive MIGUN mark by registering and using these domain names. Accordingly, the Court concludes that the Defendants' use of these URLs amounts to cybersquatting under the Lanham Act.

### D.    Unfair and Deceptive Trade Practices Claim

To establish a claim under Chapter 75, a plaintiff must demonstrate that "(1) the defendant engaged in conduct that was in or affecting commerce, (2) the conduct was unfair or had the capacity or tendency to deceive, and (3) the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation." Belk, Inc. v. Meyer Corp., 679 F.3d 146, 164 (4th Cir. 2012), as amended (May 9, 2012) (citation and internal quotation marks omitted). Chapter 75 "prohibits the same type of activity that the Lanham Act prohibits because trademark infringement and

false designation undercut the mark holder's goodwill and the consumers' ability to distinguish among products." <u>Mon Cheri Bridals, LLC v. Partnerships</u>, No. 3:15-cv-00021-FDW-DCK, 2015 WL 3509259, at *5 (W.D.N.C. June 4, 2015) (citations and internal quotation marks omitted). Here, the Plaintiff's claim for unfair and deceptive trade practices arises from the same set of facts as its Lanham Act claims. Accordingly, the Court concludes that the admitted allegations establish Plaintiff's Chapter 75 claim.

### E. Remedies Sought

Having determined that the Plaintiff has established its claims by alleging sufficient facts that the Defendants have admitted, the Court now turns to the issue of whether the Plaintiff has demonstrated entitlement to the relief requested. In its motion, the Plaintiff seeks the following remedies:

(1)     A permanent injunction enjoining the Defendants and all those acting in concert with the Defendants from making any use of the MIGUN Marks and any other marks confusingly similar thereto;

(2)     An Order requiring the Defendants to transfer to Migun Life the www.migunmedical.com and any other URL owned by the Defendants that includes the letter string "Migun" as well as the www.massageenergy.com URL;

(3)     An Order requiring the Defendants to delete all social media accounts and other online references through which the Defendants have made improper use of the MIGUN Marks, including but not limited to inclusion of the MIGUN Marks in the page or account

name, which shall include Defendants' Facebook page located at https://www.facebook.com/MassageEnergy/;

(4)     An Order requiring the Defendants to cancel service for all phone numbers used to do business under the MIGUN Marks, including but not limited to (231) 357-5500;

(5)     An award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) to be paid by the Defendants, jointly and severally;[1] and

(6)     An award of the costs of this action taxed to the Defendants, jointly and severally.

The Court will address each of these requests for relief in turn.

## 1.     Injunctive Relief

Under the Lanham Act, the Court is authorized to issue an injunction "according to principles of equity and upon such terms as the court may deem reasonable" to prevent further violations of trademark law.  See 15 U.S.C. § 1116(a).  To establish entitlement to injunctive relief, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the

---

[1] The Plaintiff has withdrawn its request for an award of fees under Chapter 75.  [See Doc. 20].

public interest would not be disserved by a permanent injunction." <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006).

The Plaintiff has satisfied all four factors in this case. The factual allegations in the Plaintiff's Complaint, which are deemed admitted in light of the Plaintiffs' default, sufficiently prove that the Defendants infringed the Plaintiff's Marks. As the Fourth Circuit has recognized, "irreparable injury regularly follows from trademark infringement." <u>Lone Star Steakhouse & Saloon</u>, 43 F.3d at 939. Accordingly, the Court concludes that the first factor of irreparable injury has been met.

As for the second factor, the Court concludes that the Plaintiff would have no adequate remedy at law if the Defendants are not enjoined from continuing their infringing and counterfeiting actions. Without an injunction, the Plaintiff would continue to suffer injury and would be forced to bring successive actions for monetary damages. <u>See</u> <u>Mon Cheri</u>, 2015 WL 3509259, at *6. Accordingly, the Court concludes that the second factor of inadequate legal remedies is also satisfied.

Third, the Plaintiff has shown that the balance of hardships weighs in its favor. The Plaintiff has demonstrated that it possesses a protectable interest in the MIGUN Marks, while the Defendants have no legal right to continue their infringing activities. Finally, the public interest is served by the

issuance of a permanent injunction to prevent consumers from being misled by the Defendants' actions.  See id.

For these reasons, the Court concludes that the entry of a permanent injunction is appropriate. The Court therefore will enter a permanent injunction enjoining the Defendants and all those acting in concert with the Defendants from making any use of the MIGUN Marks and any other marks confusingly similar thereto; requiring the Defendants to transfer to Migun Life the www.migunmedical.com and any other URL owned by the Defendants that includes the letter string "Migun"; and requiring the Defendants to delete all social media accounts and other online references through which the Defendants have made improper use of the MIGUN Marks, including but not limited to inclusion of the MIGUN Marks in the page or account name, which shall include Defendants' Facebook page located at https://www.facebook.com/MassageEnergy/.[2]

---

[2] In the exercise of its discretion, the Court declines the Plaintiff's request to require the Defendants to surrender the URL www.massageenergy.com or to cancel all phone numbers used by the Defendants to do business.  The Plaintiff has not demonstrated that such drastic measures are necessary to afford adequate relief.  Further, both the URL and the phone numbers may be used by the Defendants in the future for legitimate, competitive purposes.  See, e.g., Left Coast Wrestling, LLC v. Dearborn Int'l LLC, No. 3:17-cv-00466-LAB-NLS, 2018 WL 2328471, at *16 (S.D. Cal. May 23, 2018) ("The Lanham Act is intended to prevent *unfair* competition, not *any* competition.").

## 2.     Attorneys' Fees and Costs

The Court may award attorney fees to the prevailing party in a Lanham Act case, but only if such case is deemed "exceptional."  15 U.S.C. § 1117(a). The Supreme Court has explained that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated," and that "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."  Octane Fitness, LLC v. ICO Health & Fitness, Inc., 572 U.S. 545, __, 134 S. Ct. 1749, 1756 (2014); Verisign, Inc. v. XYZ.COM LLC, 891 F.3d 481, 487 (4th Cir. 2018) (applying Octane Fitness to Lanham Act case). The Court may find a case to be "exceptional" when it determines, "in light of the totality of the circumstances," that:

> (1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable; (2) the non-prevailing party has litigated the case in an unreasonable manner; or (3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence.

Georgia-Pacific Consumer Prods. LP v. Von Drehle Corp., 781 F.3d 710, 721 (4th Cir. 2015) (internal quotation marks and citations omitted).

In the present case, the Defendants have failed to defend this action and thus have not offered any justification for their infringing actions. Furthermore, the factual allegations of the Plaintiff's Complaint, which are deemed admitted in light of the Defendants' default, establish that the Defendants' use of the MIGUN Marks was done willfully and deliberately. As such, there does not appear to be any objectively reasonable position to justify the Defendants' actions. "Willful defiance of the judicial process lends sufficient grounds for finding that an exceptional case under § 1117(a) exists." Agri-Supply Co. v. Agrisupply.com, 457 F. Supp. 2d 660, 667 (E.D. Va. 2006); see also Living Legends Awards for Serv. to Humanity, Inc. v. Human Symphony Found., Inc., No. PX 16-3094, 2017 WL 3868586, at *7 (D. Md. Sept. 5, 2017) (finding case exceptional, noting that the "defendant has not litigated the case in a reasonable manner considering that it has not responded at all") (citation omitted); Hilton Worldwide, Inc. v. Global Advert., Inc., No. 1:15cv1001, 2016 WL 8223436, at *9 (E.D. Va. Apr. 8, 2016) (same).

The Plaintiff requests attorneys' fees and costs in the amount of $10,892.64, consisting of a total number of 37.10 hours of work performed by attorney Rebecca Crandall at a rate of $295.00 per hour and by attorney Will Jamison at a rate of $190.00 per hour. In support of this request, the

Plaintiff has submitted the Declaration of Rebecca Crandall, which contains itemized invoices showing the legal services provided and fees incurred, as well as the 2015 Report of the Economic Survey completed by the American Intellectual Property Law Association, which provides statistics, such as the average hourly rates of associates and partner based upon experience and region.  [Doc. 20-1].

Upon careful review of Ms. Crandall's Affidavit, as well as the materials filed in support thereof, the Court finds that the amount of fees and costs requested is reasonable compensation for work necessarily expended to enforce the Plaintiff's rights.  Accordingly, the Court will award the Plaintiff a total of $10,892.64 in fees and costs under the Lanham Act.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Default Judgment [Doc. 17] is **GRANTED**, and **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:**

1.     Defendants, including all officers, members, directors, agents, employees, representatives, and all persons acting in concert or participation with them who receive actual notice of the Default Judgment and Permanent Injunction Order are permanently enjoined and restrained from:

A.    Using the Migun Marks, or any confusingly similar mark, in connection with the advertising of retail store services, medical device maintenance and repair services, or products not manufactured by Migun Medical;

B.    Using any false designation of origin or representing or suggesting directly or by implication that Defendants are affiliated with, associated with, authorized by, or otherwise connected to Migun Medical, Plaintiff, or Plaintiff's sublicensees;

C.    Using marks other than the Migun Marks to identify Migun Medical products or removing Migun Marks from Migun Medical products and, thus, pass off Migun Medical products as having been manufactured by another entity;

D.    Engaging in any other activity constituting infringement of the Migun Marks or unfair competition with Migun Medical, Plaintiff, or Plaintiff's sublicensees through false designation of origin, reverse passing off, or cybersquatting;

E.    Assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in paragraphs A through D above, or effecting any assignments or transfers, forming new entities or associations, or utilizing any

other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in paragraphs A through D above.

2. Defendants shall transfer to Plaintiff all domain registrations containing the Migun Marks, including but not limited to www.migunmedical.com.

3. Defendants shall delete all social media accounts and other online references, including websites, through which Defendants have made improper use of the Migun Marks, including but not limited to the past or present inclusion of the Migun Marks in the page or account name, or improper references to Migun Medical products.

4. Defendants' conduct relating to this matter has made this an exceptional case, and, thus, Defendants are jointly and severally liable for the payment of Plaintiff's reasonable attorney fees and costs in this action in the amount of $10,892.64 pursuant to 15 U.S.C. § 1117(a).

5. This Court shall retain jurisdiction over the parties and the subject matter of this litigation for the purpose of interpreting and enforcing this Default Judgment and Permanent Injunction Order.

**IT IS SO ORDERED.**

Signed: November 16, 2018

Martin Reidinger
United States District Judge